WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Neil M. Heggem,<br><br>              Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>              Defendant. | No. CV-13-02218-PHX-JAT<br><br>**ORDER** |

Plaintiff Neil M. Heggem appeals a denial of benefits by the Acting Commissioner of Social Security ("Commissioner"). The Court now rules on his appeal.

**I.      BACKGROUND**

   **A.      Procedural History**

Plaintiff filed an application for disability insurance benefits on August 30, 2011, alleging disability beginning September 1, 2010. The claim was denied on February 23, 2012, and again upon reconsideration on September 19, 2012. Plaintiff requested a hearing, which was conducted by an Administrative Law Judge ("ALJ") on April 10, 2013 in Phoenix, Arizona.

   **B.      Factual Background**

Plaintiff's alleged disability centers on his battles with depression and anxiety. The

earliest evidence of this condition on the record are notes from his emergency room visit in July of 2010, where Plaintiff reported that his "life feels unmanageable" and that he had a medical history of depression and anxiety. Plaintiff was taken from that emergency room to a behavioral health center, where he was assessed by several doctors. After participating in an inpatient program, Plaintiff was discharged from the behavioral center in the fall of 2010.

Plaintiff began treatment with a mental health counselor, Karen Merry, L.P.C., in November of 2010. She completed a Medical Assessment of Claimant's Ability to Preform Work-Related Activities in December 2010, opining that Plaintiff had "severe" limitations in his abilities to respond to customary work pressures. Ms. Merry also opined that Plaintiff had "moderately severe" limitations in his ability to relate to other people, understand and carry out instructions, and perform simple, repetitive, or varied tasks. Ms. Merry further opined that there were "moderate" restrictions on Plaintiff's ability to perform daily activities, respond appropriately to supervision, and respond appropriately to co-workers.

In February of 2011, Plaintiff began treatment with Adam Koelsch, M.D. Plaintiff continued treatment with Dr. Koelsch for several years, and Dr. Koelsch kept hand-written notes of each visit and treatment plan. Dr. Koelsch completed his Medical Assessment of Claimant's Ability to Preform Work-Related Activities in March 2013, in which he concluded that Plaintiff had a "severe" deterioration in personal habits, as well as "moderate" restrictions on his ability to relate to other people, engage in daily activities, understand, carry out, and remember instructions, and respond appropriately to supervision and coworkers.

In March 2012, Plaintiff's wife called the police when he, in a depressed state, pulled a knife. Plaintiff was jailed because the police thought he was trying to hurt his wife, although Plaintiff claims he was contemplating hurting himself. Plaintiff was subsequently hospitalized, where he was given new medication which Plaintiff reported to be helpful.

1    Plaintiff was examined by several non-treating physicians. In February of 2012, Charles House, Ph.D. performed an in-depth assessment, concluding that while he "did not observe any obvious signs of malingering," Plaintiff "did not seem as limited as he would sometimes describe himself as being." That same month, Plaintiff was examined by Robert Campion, M.D., who concluded that Plaintiff's ability to understand, remember, and carry out complex instruction is "mildly limited." Dr. Campion also concluded that Plaintiff's ability to get along with coworkers and maintain socially appropriate behavior in a work setting is "mild to moderately limited" and his ability to adapt to a workplace changes is "mildly limited." Plaintiff was also examined by Shannon Tromp, Ph.D, who observed that Plaintiff had trouble with concentration but scored Plaintiff perfectly on a mental status examination. Dr. Tromp specifically noted that her conclusions were largely based on Plaintiff's subjective reports.

Plaintiff completed a function report, in which he reported that although he sometimes helped with household chores, shopping with his wife, and caring for his disabled daughter, was usually "too ill to be functional" and too "overwhelmed and stressed out" to perform assigned tasks. He also reported that he had difficulty sleeping and that he needed prompting to get the motivation to eat or bathe. Plaintiff's wife also completed a function report, which reported largely the same information in Plaintiff's self-report.

## II.   DISABILITY

### A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to

>do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R.

§ 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

**C.    The ALJ's Evaluation Under the Three-Step Process**

The ALJ found in step one of the sequential evaluation process that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of September 1, 2010. (*Id.*) The ALJ then found Plaintiff to have the following medically determinable

impairments: major depressive disorder, generalized anxiety disorder with panic attacks, and history of benzodiazepine dependence/abuse. Under step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." Accordingly, the ALJ concluded that Plaintiff is not disabled and therefore not entitled to benefits.

### D. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## II. PLAINTIFF'S REPORTED SYMPTOMS

The Court first turns to Plaintiff's objection to the ALJ's finding that his statements regarding the severity of his impairment were "not entirely credible."

### A. Legal Standard

An ALJ must engage in a two-step analysis to determine

- 6 -

> whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–36. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the symptom itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed symptom. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))
>
> Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz. Feb. 10, 2014).

### B. Discussion

The ALJ in this case found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 15). Thus, the first step in the test for determining the credibility of a claimant's subjective reports is satisfied.

- 7 -

1       Regarding the second step, the ALJ found that "the claimant's statements
2  concerning the intensity, persistence, and limiting effects of these symptoms are not
3  entirely credible" for several reasons. (Tr. at 16). First, the ALJ pointed out that "the
4  record reflects significant gaps in treatment and in reported medication use." (Tr. at 16).
5  These gaps, the ALJ reasoned, "suggest the claimant's symptoms were not as severe as
6  he has alleged." (Tr. at 16). Next, the ALJ noted that despite Plaintiff's reports that
7  antidepressant medications had been ineffective, some of Plaintiff's medications had
8  actually been effective in controlling his symptoms. The ALJ also found that Plaintiff had
9  made "inconsistent statement[s] regarding the reason behind his reduced functioning."
10 (Tr. at 16). Specifically, the ALJ noted that Plaintiff reported in February 2012 that he
11 had quit work because of medication side effects, but in August 2012 he reported that he
12 quit because of his anxiety symptoms. Finally, the ALJ noted that an examining
13 psychologist observed that Plaintiff did "not seem to be as limited as he would sometimes
14 describe himself to be." (Tr. at 16).

15      Plaintiff explains that one gap in his medication was because he had checked into
16 a treatment facility to address his drug dependency issues. Plaintiff does not, however,
17 explain the second gap in his medication mentioned by the ALJ. Plaintiff explains the gap
18 in his mental health counseling by stating that he had seen a counselor "only three weeks
19 prior." Regarding his medications being "helpful," Plaintiff admits that Xanax and Zoloft
20 were "initially effective, but their efficacy was lost." Thus, Plaintiff argues, because the
21 drugs were "not ultimately helpful," it was not inconsistent for him to report that
22 antidepressants were ineffective. Regarding Plaintiff's conflicting statements about his
23 departure from the workforce, Plaintiff argues that he did not report that the medications'
24 side effects were the reason he quit, but that he more generally stated that he left because
25 he "wasn't functioning." Finally, Plaintiff argues that the consulting psychiatrist's
26 opinion that Plaintiff "did not seem as limited as he would sometimes describe himself as
27 being" is not credible because the psychiatrist made multiple unrelated factual errors in
28 the report.

- 8 -

1 Plaintiff's arguments are unavailing. First, Plaintiff does not explain every issue 2 that gave the ALJ reason to doubt his credibility. Most notably, Plaintiff offers no 3 explanation for one of the gaps in his medication treatment that troubled the ALJ. 4 Additionally, Plaintiff's explanations for his inconsistent statements are not all supported 5 by the record. For example, despite Plaintiff's claim to the contrary, he did report that his 6 medications' side effects were the reasons he left his job, which, as the ALJ noted, 7 contradicts his later statement that he quit because of his symptoms. (*Compare* R. 516 8 ("He stated he left his job because 'I wasn't functioning.' He indicated he was having 9 problems functioning because of side effects he was having from his medication.") *and* 10 R. 660 ("The claimant was asked what problems make it difficult to work. 'My chronic 11 anxiety. My mood disorder. And my major depression. All the physical symptoms that I 12 get from that. I get terrible insomnia. I get palpitations, stomach upset, nausea/vomiting, 13 sweating, mental fatigue.' . . . His last job was as an assistant controller, the last day was 14 a year ago, 8/11. He had been there four months and the job ended 'because I was too . . . 15 I couldn't work there with my anxiety.'").

16 The remainder of Plaintiff's arguments amount to requests for this Court to re-17 evaluate the record evidence and accept Plaintiff's explanations over the ALJ's rational 18 factual findings. This the Court cannot do. The ALJ rationally concluded that inconsistent 19 statements, gaps in medication, and successful medication undermine Plaintiff's reports 20 of severe symptoms that overcome his ability to work. That Plaintiff offers alternative, 21 plausible explanations is not enough for this Court to set aside the ALJ's findings. 22 *Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational 23 interpretation, one of which supports the ALJ's decision, the ALJ's decision must be 24 upheld.")

25 Therefore, the Court concludes that the ALJ did not err by finding that Plaintiff's 26 statements regarding his mental impairments were "not entirely credible."

27 **III. THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN**

28 The Court now turns to Plaintiff's objection to the ALJ's discrediting the opinion

- 9 -

of Dr. Koelsch and assigning "great" and "significant" weight to consultative examining physicians.

### A.     Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also Orn*, 495 F.3d at 631. On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631.

"When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830). Importantly, "[a]n ALJ may reject a treating physician's opinion

if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Furthermore, an ALJ may discredit a treating physician's opinion when it is unsupported by or in conflict with objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The Ninth Circuit has recently cautioned that "checklist" styled assessments should not be discredited merely because they are not formally accompanied by supporting evidence. *Garrison v. Colvin*, 759 F.3d 955, 1013–14 (9th Cir. 2014). Rather, "checklist assessments" that are consistent with treatment notes created in the course of a physician's relationship with a patient are entitled to the same weight as any other form of medical opinion. *Id.*

### B.  Discussion

The ALJ discredited Dr. Koelsch's March 2013 assessment for several reasons. First, the ALJ found that the assessment was in "check-list format with no supporting evidence provided." (Tr. at 18). The ALJ further suggested that the consultative and DDS specialists were more credible because Dr. Koelsch, unlike the other examining physicians, did not include objective findings such as a mental status examination. The ALJ found Dr. Koelsch's treatment notes to be "unpersuasive" because they "describe the claimant's medications as being helpful (with weight gain as the only side effect), described work or work-like activity (programming), and documented increased symptoms following periods of non-compliance with medication." (Tr. at 18).

Plaintiff argues that the ALJ erred by ignoring the objective findings in Dr. Koelsch's treatment notes when she discredited Dr. Koelsch's "checklist assessment." The Court disagrees. The ALJ clearly did not ignore Dr. Koelsch's treatment notes; in fact, the ALJ made several findings regarding the notes which support her decision to assign little weight to the assessment. Most notably, the ALJ found that Dr. Koelsch did not support his assessment with objective findings. Although the Court recognizes that

Dr. Koelsch's treatment notes did include some objective findings, such as his observations of Plaintiff's mood, affect, and weight, the treatment notes appear to be largely based on Plaintiff's subjective reports about his anxiety, depression, and lack of concentration. Given that the ALJ properly discredited Plaintiff's subjective reports regarding the severity of his symptoms, it was appropriate for the ALJ to discredit Dr. Koelsch's assessment, which relied heavily on those reports. *Tommasetti*, 533 F.3d at 1041. By contrast, the opinions of non-treating medical examiners were based on examinations that appear to be much more in-depth and include significantly more objective findings. (Tr. at 513–19, 660–66). The ALJ therefore did not err by discrediting Dr. Koelsch's assessment.[1]

## IV. THE OPINION OF PLAINTIFF'S MENTAL HEALTH COUNSELOR

The Court now turns to Plaintiff's objection to the ALJ's assignment of "little weight" to Ms. Merry's December 2010 assessment.

### A. Legal Standard

The regulations differentiate between opinions from "acceptable medical sources," such as physicians and psychologists, and opinions from "other sources," such as nurse-practitioners and therapists. 20 C.F.R. § 404.1513(a), (c). While the ALJ must give specific, legitimate reasons supported by substantial evidence to reject an opinion from a treating medical source, she need not give the same deference to opinions from non-medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Rather, opinions from non-medical sources may be rejected as long as the ALJ gives reasons for doing so that are "germane to each witness" and "substantiated by the record." *Id.*

### B. Discussion

The ALJ gave several reasons for rejecting Ms. Merry's assessment, several of which mirror her reasoning with regard to Dr. Koelsch's opinion. First, the ALJ states

---

[1] Plaintiff also argues that the ALJ erred by focusing on several instances of improvement when assigning little weight to Dr. Koelsch's assessment. The Court does not reach this issue, however, since it concludes that the reasons stated above are sufficient to support the ALJ's decision to discredit Dr. Koelsch's assessment.

- 12 -

that while Ms. Merry's "checklist assessment" provided "a bit more information" than Dr. Koelsch's, "there is no indication that a formal mental status examination was performed." (Tr. at 18). Next, the ALJ reasons that Ms. Merry's assessment was "not consistent with the assessments of the DDS doctors and consultative examiners," which are more reliable because they are "acceptable medical sources" under the regulations. (Tr. at 18).

The Court concludes that the reasons given by the ALJ for discrediting Ms. Merry's assessment are germane to that assessment. Like with Dr. Koelsch's treatment notes, the Court recognizes that Ms. Merry's treatment notes also contain come objective findings. However, as the ALJ pointed out, Ms. Merry's treatment notes do not contain a formal mental status examination. In light of the in-depth examinations performed by the consultative sources and those source's higher qualifications, it was not inappropriate for the ALJ to assign Ms. Merry's assessment less weight than the consultative physicians. The ALJ therefore did not err by assigning "little weight" to Ms. Merry's assessment.

## VI. Plaintiff's Wife

### A. Legal Standard

"Lay testimony as to a claimant's symptoms is competent evidence which the Secretary must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)) (internal citations omitted). Examples of legitimate reasons for disregarding lay testimony include inconsistency with medical sources and close relationships with the claimant. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)

### B. Discussion

The ALJ listed several reasons for discrediting the statements of Plaintiff's wife. First, the ALJ reasoned that because Plaintiff's wife is not medically trained, her ability to "make exacting observations" about Plaintiff's condition "is questionable." (Tr. at 18).

- 13 -

Next, the ALJ stated that Plaintiff's wife would be biased because of her "affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (Tr. at 18). Finally, the ALJ explained that she discredited the statements of Plaintiff's wife because they were "not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Tr. at 18).

Plaintiff argues that since the regulations require ALJs to consider lay testimony, the ALJ cannot discount the statements of Plaintiff's wife simply because she is untrained. Indeed, Plaintiff points out that the regulations specifically state that non-medical sources—even spouses—"may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P. Plaintiff further argues that the statements of Plaintiff's wife are, in fact, consistent with medical evidence, such as Dr. Koelsch's notes and assessments, as well as one of the consultative examiners who opined that Plaintiff appeared "credible" and that Plaintiff has developed an "inability to cope with even a simple daily routine on a regular basis." (Tr. at 664).

As noted above, the Ninth Circuit has held that inconsistency with medical sources and close relationships with the claimant are legitimate reasons to disregard lay testimony. *Greger*, 464 F.3d at 972. These are precisely the reasons the ALJ here gave for rejecting Plaintiff's wife's statement. While Plaintiff offers rational reasons why the ALJ could have accepted to statements of Plaintiff's wife, these reasons do nothing more than show that the evidence is in conflict. In such circumstances, this Court must uphold that ALJ's rational conclusions. *Thomas*, 278 F.3d at 954. Accordingly, the Court concludes that the ALJ did not err by rejecting the statement of Plaintiff's wife.

**VII. Conclusion**

Accordingly,

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

1  accordingly. The judgment will serve as the mandate of this Court.

2  Dated this 22nd day of January, 2015.

*James A. Teilborg*
Senior United States District Judge